UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK CRAWFORD, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>WILLIAM P. BARR, U.S. ATTORNEY GENERAL,<br><br>    Defendant. | Civil Action No. 17-798 (JEB) |

**MEMORANDUM OPINION**

Plaintiffs — four black Criminal Investigators at the Department of Justice — bring this suit alleging racial discrimination in their employment. Specifically, they believe that they are being undercompensated relative to their white peers. Yet, as currently framed, their Complaint is rather opaque, and its jumble of facts and theories falls short of stating any viable claim. Plaintiffs, however, in F. Scott Fitzgerald's words, should not "confuse a single failure with a final defeat." Tender is the Night 157 (Wordsworth ed. 1995). To provide them sufficient opportunity to state their case, the Court will dismiss the Complaint without prejudice, but will refrain from jettisoning the entire suit, a disposition that will allow them to file an amended (and clearer) Complaint if they so desire.

**I.    Background**

   A. Factual Background

Plaintiffs are four black men and women employed as Criminal Investigators by the Superior Court Division of the U.S. Attorney's Office in Washington, D.C. See ECF No. 35 (First Amended Complaint), ¶¶ 13–17. Like all federal employees, they are compensated

1

pursuant to a graded scale. All CIs in the Superior Court Division are paid at the grade level denominated "GS-12," while those in the District Court Division are paid at the higher-salaried "GS-13" level. Id., ¶ 18. It is not clear from Plaintiffs' Complaint whether all the Superior Court Investigators are black or whether all their counterparts in the District Court Division are white. Plaintiffs do nonetheless assert that the pay disparity results from DOJ's racial animus. Id., ¶¶ 9, 22, 24.

B. Procedural History

In October of 2015, Plaintiffs filed a formal discrimination complaint with the Equal Employment Opportunity Commission in which they alleged that they were being "paid . . . less than similarly-situated Caucasian employees." Id., ¶¶ 10, 13. They subsequently decided to terminate that administrative process in favor of pursuing this theory in federal court. Id., ¶ 11. They filed their initial lawsuit in this Court on April 30, 2017, asserting that DOJ had discriminated against them in violation of the Lilly Ledbetter Fair Pay Act of 2009 and Title VII of the Civil Rights Act. See ECF No. 1 (Pl. Complaint), ¶ 7. In the ensuing years, the parties pursued mediation but failed to resolve their dispute. See ECF No. 27 (Joint Status Report of March 4, 2019) at 1. Meanwhile, in February 2019, Plaintiffs filed a second substantially similar lawsuit in this Court. See Crawford v. Barr, No. 19-440 (D.D.C. Feb. 21, 2019).

After Defendant moved for judgment on the pleadings in the current case, Plaintiffs sought, with Defendant's consent, to amend their Complaint. See ECF Nos. 29 (Def. MJP), 34 (Pl. MTA). In moving to amend, Plaintiffs agreed to voluntarily dismiss the 2019 case, conceding that it was duplicative of their 2017 salvo. See Pl. MTA, ¶ 6. The Amended Complaint lists four counts, which could be liberally construed as alleging claims of discrimination, retaliation, and a retaliatory hostile work environment under Title VII of the Civil

Rights Act. The 2019 case having been folded into its 2017 counterpart, DOJ now moves to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6). It also moves to strike certain allegations in the Amended Complaint under Federal Rule of Civil Procedure 12(f).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (citing Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993)). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Additionally, under Federal Rule of Civil Procedure 12(f), a court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "A motion to strike is a 'drastic remedy that courts disfavor,' and trial judges have discretion to either grant or deny such motion." Bey v. Washington Metro. Area Transit Auth.,

341 F. Supp. 3d 1, 11 (D.D.C. 2018) (alterations omitted) (quoting Riddick v. Holland, 134 F. Supp. 3d 281, 285 (D.D.C. 2015)).

**III. Analysis**

In seeking dismissal here, DOJ argues that each of the four counts listed in Plaintiffs' Amended Complaint does not state a plausible claim for relief. Defendant also moves to strike certain allegations in the Complaint on the ground that they relate scandalous hearsay allegations about a DOJ employee. The Court first considers whether to dismiss the counts in the Amended Complaint and then addresses the Motion to Strike.

   A. Motion to Dismiss

      1. *Count I*

The Court agrees with Defendant that the scattershot list of facts and accusations that currently compose Count I does not clear the pleading bar, modest as it is. This count alleges that DOJ "discriminated against each of [the Plaintiffs] based on their race (Black) when on or about August 6, 2015, August 20, 2015 and September 3, 2015, to the present, [Defendant] paid them less than similarly-situated Caucasian employees." First Am. Compl., ¶ 3. In support of this allegation, Plaintiffs point to a variety of disconnected evidence, among which is that: (1) whites employed in the District Court Division are "rated at the GS-13 level," id., ¶ 18; (2) Plaintiffs filed an EEOC discrimination complaint, id., ¶ 19; and (3) "GS-13 supervisor" Christopher Brophy "reportedly had a conversation on work premises" where he referred to a black Criminal Investigator as a member of the "Cornfield." Id., ¶ 23.

Even generously construed as a discrimination claim brought under Title VII of the Civil Rights Act (referenced not in Count I but elsewhere in the Complaint), this count fails as a matter of law. (Plaintiffs also invoke the Lilly Ledbetter Fair Pay Act, but that statute does not provide

4

an independent cause of action.  See McNair v. District of Columbia, 213 F. Supp. 3d 81, 88 (D.D.C. 2016.))  Title VII "bars 'intentional discrimination and artificial, arbitrary, or unnecessary barriers' that stand in the way of 'equal opportunity' without regard to race."  Davis v. District of Columbia, 925 F.3d 1240, 1248 (D.C. Cir. 2019) (quoting Segar v. Smith, 738 F.2d 1249, 1258 (D.C. Cir. 1984)).  Under Title VII, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability."  Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citing 42 U.S.C. § 2000e-16(a)).  Count I does not sufficiently allege this second element.

It is true that Plaintiffs allege that they are paid less than "similarly situated [Caucasian] employees."  First Am. Compl., ¶ 24; see Walker v. Johnson, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (employer's better treatment of similarly situated employees outside the plaintiff's protected group provides indirect evidence of racial discrimination).  Yet they later state that those same white employees work in a completely different division — the District Court Division, which, unlike the Superior Court Division, handles federal offenses — that rates investigators "at the GS-13 level."  First Am. Compl., ¶ 18.  Plaintiffs' own Complaint, then, reveals that they are not similarly situated to the relevant employees outside of their protected class.  See Ragsdale v. Holder, 668 F. Supp. 2d 7, 25 (D.D.C. 2009) (to show that he is similarly situated to fellow employee, plaintiff must "demonstrate that all of the relevant aspects of their employment situation are nearly identical").  Plaintiffs do not even allege that they applied for positions in the District Court Division or that they were demoted to their current positions.  And while they allege that they brought pay-disparity concerns to unnamed "management officials" in 2008, see First Am. Compl., ¶ 21, they also alternatively assert that

the pay disparity began in 2015, id., ¶ 9, which would make their protesting such a disparity in 2008 subject to the constraints of time travel.

Plaintiffs also allege that Christopher Brophy, a supervisor of GS-13 CIs in the District Court Division, referred to them using the racially pejorative term, the "Cornfield." Id., ¶ 23. In order to support a finding of discriminatory animus, however, there "must be a clear nexus between the stray workplace remark and the adverse action." Ajisefinni v. KPMG LLP, 17 F. Supp. 3d 28, 44 (D.D.C. 2014) (quotation marks and alteration omitted). Plaintiffs do not maintain that Brophy — who was not their supervisor — had any involvement in personnel decisions that related to their terms of employment, let alone that he participated in an adverse action against them. See Beeck v. Fed. Express Corp., 81 F. Supp. 2d 48, 53–54 (D.D.C. 2000) ("Direct evidence does not include stray remarks in the workplace, even if made by decision-makers, where the remarks are unrelated to the decisional process itself."). In sum, Count I's "naked assertion[]" of racial discrimination, devoid of "factual enhancement," fails to plead a cognizable discrimination claim. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

2. *Count II*

Count II appears to allege a retaliatory hostile-work-environment claim — *i.e.*, that DOJ created a hostile environment in retaliation for Plaintiffs' filing of their 2017 lawsuit in federal court. See First Am. Compl., ¶¶ 27–28; Baird v. Gotbaum, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (quoting Hussein v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006)) ("[A] hostile work environment can amount to retaliation under Title VII."). The Complaint, however, pleads neither of the two requisite components of such a claim: the existence of a hostile work environment or retaliation for Plaintiffs' participation in a protected activity.

6

As to the first, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Baloch, 550 F.3d at 1201 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "The Supreme Court has made it clear that 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" George v. Leavitt, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). Plaintiffs' vague allegations — namely, that Defendant "denied them the opportunity to fully perform their duties" and "assigned them duties that were below their GS grade," First Am. Compl., ¶ 28 — fall short of the "severe or pervasive" conduct that might support a hostile-environment claim.

The enumerated events also do not constitute retaliatory actions whether considered in the context of a hostile-work-environment claim or not. "To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." Baloch, 550 F.3d at 1198. Yet Plaintiffs do not connect any of the allegedly punitive acts, such as "den[ying] them the opportunity to fully perform their duties," First Am. Compl., ¶ 28, to their commencement of the 2017 lawsuit — the protected activity at issue. Indeed, they filed that Complaint on April 30, 2017, and did not serve it until June 1. All of that litigation activity took place after the events alleged in Count II, which occurred on April 25, April 27, and May 9 of 2017. Id., ¶ 28; see Dudley v. WMATA, 924 F. Supp. 2d 141, 182 (D.D.C. 2013) ("It is hard to argue that the employer punished plaintiff because of plaintiff's protected activity, if the employer was completely unaware of plaintiff's protected activity."); Lewis v. District of Columbia, 653 F. Supp. 2d 64, 79 (D.D.C. 2009) ("The fact that the allegedly retaliatory actions preceded the

7

protected activity precludes a determination that the protected activity caused the defendant to retaliate against the plaintiff."). Plaintiffs' retaliatory hostile-work-environment claim thus cannot proceed.

### 3. *Counts III and IV*

Finally, Plaintiffs' third and fourth counts appear to be entirely duplicative of counts I and II and contain the same fatal deficiencies. These Counts, like those before them, allude to a "reorganization" that resulted in Plaintiffs' remaining at the "GS-12" level. See First Am. Compl., ¶ 38. Counts III and IV also state that "similarly situated" white Criminal Investigators are being paid at the GS-13 level, while Plaintiffs are forever mired at GS-12, in part because of their grievances about the pay disparity. Id.

Throughout Counts III and IV, Plaintiffs sprinkle a slew of inconsistencies and unrelated facts that make discerning a viable discrimination claim impossible. For example, they allege that unnamed management officials reorganized their office in 2007 and conducted a review in 2010. Id., ¶¶ 30–34. Yet, as Defendant highlights, even those few Plaintiffs who were employed at DOJ during that period did not experience a change in their position after the reorganization or the 2010 review. They have thus not alleged how the reorganization or review harmed them in any way. Additionally, these counts appear to compare Plaintiffs to white Criminal Investigators employed at the "GS-18" level in New Jersey and New York, id., ¶ 44, who are not relevant comparators, since the D.C. USAO is the only office that handles both local and federal prosecutions and thus divides its CIs between the two functions. See ECF No. 38 (Def. MTD) at 20–21. For largely the same reasons stated above, then, these counts do not plead sufficient facts to support discrimination or retaliation claims.

* * *

Although all four counts suffer from numerous defects, the Court does not foreclose the possibility that Plaintiffs might be able to state a claim for relief. Cf. Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("[D]ismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possible cure the deficiency.") (quoting Jarrell v. United States Postal Serv., 753 F.2d 1088, 1091 (D.C. Cir. 1985)). As a result, it will dismiss only the First Amended Complaint and not the entire case, thus giving Plaintiffs one more opportunity. See Ciralsky v. CIA, 355 F.3d 661, 667 (D.C. Cir. 2004) ("The dismissal without prejudice of a complaint [is] not final . . . because the plaintiff is free to amend his pleading and continue the litigation[;] . . . dismissal without prejudice of an action (or 'case'), by contrast . . . end[s] the suit . . . [and] is final.").

B. Motion to Strike

Defendant also moves to strike certain allegations in the Complaint relating to Brophy. By way of reminder, under Federal Rule of Civil Procedure 12(f), a court may strike "any redundant, immaterial, impertinent, or scandalous matter." The bar for prevailing on such a motion remains high because "courts disfavor motions to strike." Bey, 341 F. Supp. 3d at 11. Indeed, "[a]bsent a strong reason for so doing, courts will generally not tamper with the pleadings." Id. (internal quotation marks and citation omitted). "In considering a motion to strike, courts will draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denial of the motion to strike." Moore v. United States, 318 F. Supp. 3d 188, 190–91 (D.D.C. 2018).

Given the above standard, even as it dismisses Plaintiffs' Complaint, the Court will deny the Motion to Strike. DOJ takes issue with Plaintiffs' statements concerning Brophy, including

that he was suspended from work and directed employees to lie on timesheets and violate applicable agency regulations. See Def. MTD at 25. According to Defendant, these constitute the sorts of "scandalous" allegations, "unrelated to the underlying claims," that courts have stricken. Id. Although the comments are certainly not favorable, they are hardly so scandalous and irrelevant to warrant striking. See Wiggins v. Philip Morris, Inc., 853 F. Supp. 457, 457–58 (D.D.C. 1994) (striking allegations of "illicit drug usage" by employee of Defendant because of irrelevance to racial-discrimination claim). A motion to strike requires more of Defendant than merely an assertion that an unpleasant accusation lodged against it will ultimately be disproved. DOJ furthermore has not carried its burden of establishing that Plaintiffs' accusations about Brophy were made "in bad faith or for the purpose of deceiving the court," and the Court declines to strike them from the record. See Nwachukwu v. Karl, 216 F.R.D. 176, 180 (D.D.C. 2003). In any event, the Complaint is being dismissed, which largely negates Defendant's concerns.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss and deny its Motion to Strike. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 4, 2019